# Fairbanks, Morse & Company v. Carson-Muse Lumber Company.

(Decided October 16, 1914.)

## Appeal from Whitley Circuit Court.

1. Contracts—Sale of Engine—Contemplated Damages From Breach.
—Where in a contract for the sale of an engine to operate the
stave manufactory of the purchaser, there was an agreement by
the seller to deliver the engine on board the cars at Cincinnati
not later than three days after the date of sale, for its immedi-
ate transportation by the railroad company to the purchaser's
stave manufactory, and it was understood by the seller in mak-
ing the contract that any considerable delay, beyond the third
day, in delivering the engine on board the cars, would temporarily
prevent the operating of the stave manufactory, and thereby
cause a loss of profits to the purchaser in its business and deterio-
ration in the quality and value of its stave timber then on hand,
a delay by the seller of fifteen days in the delivery of the engine
on board the cars, constituted a breach of the contract of sale,
which entitled the purchaser to such damages as it sustained by
way of loss of profits in its business, or deterioration in the qual-
ity and value of its stave timber, resulting from and directly
caused by such delay.

2. Instructions—When Error in as to Measure of Damages Will Com-
pel a Reversal.—An instruction given by the trial court which
omitted to confine the recovery of damages by the purchaser of
the engine to such as were sustained by it, either in loss of profits
in its business or deterioration in the quality and value of its
stave timber or both, resulting during or from the delay of
the seller in delivering the engine on board the cars at Cincin-
nati beyond the day fixed by the contract of sale for its delivery,
constitutes reversible error.

3. Instructions—Additional Instruction as to Measure of Damages—
When Necessary.—As in this case the railroad company did not
deliver the engine at the purchaser's place of business until seven
days after it had been placed on board the cars at Cincinnati by
the seller, the trial court, in addition to a proper instruction as to
the measure of damages, should have further instructed the jury
that the seller of the engine was not liable for any damages that
the purchaser thereof may have sustained, either by way of loss
of profits in its business or deterioration in the value of its
stave timber, during or resulting from the delay, if any, on the part
of the railroad company in transporting the engine to appellee's
place of business in Whitley county, after it was delivered by
appellant on board the cars at Cincinnati.

J. N. SHARP and C. N. SMITH for appellant.

TYE, SILER & GATLIFF for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This action was instituted by the appellant, Fairbanks, Morse & Company, in the Whitley Circuit Court to recover of the appellee, Carson-Muse Lumber Company, $350.00, the purchase price of a steam-engine, and $18.55, freight paid thereon. The appellee's answer, without controverting these demands, set up a counter-claim for $1,103.50 damages, alleged to have been caused it by a delay of fifteen days in the delivery, on board of cars at Cincinnati, Ohio, of the engine by the appellant for shipment to its stave manufactory. To this answer and counter-claim a demurrer was sustained by the circuit court and judgment rendered in appellant's behalf for the amounts, respectively, claimed in the petition. From that ruling and judgment Carson-Muse Lumber Company, the present appellee, prosecuted an appeal to this court, which reversed the judgment and remanded the cause, with directions to the circuit court to set aside the judgment, overrule the demurrer to the answer and counterclaim and permit such further proceedings, consistent with the opinion of the Court of Appeals, as the parties might desire to take. (See opinion in Carson-Muse Lumber Co., v. Fairbanks, Morse & Co.. 151 Ky., 404.)

Following the return of the case to the court below and the completion of the issues, by the filing of a reply controverting the affirmative matter of the counterclaim, there was a trial, which resulted in a verdict in favor of the appellee, Carson-Muse Lumber Company, upon its counterclaim, for $131.45, awarded it as damages in excess of the demands sued for by the appellant, Fairbanks, Morse & Company. From the judgment entered upon that verdict the latter has appealed.

The only ground relied upon by appellant for a reversal of the judgment is, that the trial court erred in giving to the jury an instruction marked "No. 2." which reads as follows:

"If the jury believe from the evidence that the defendant purchased from the plaintiff an engine on or about the second day of March, 1911, with the definite understanding on its part and with a promise on the part of plaintiff to deliver the engine on board the cars at Cincinnati, Ohio, on the fifth day of March, 1911, for immediate transportation to the place of business of the defendant in Whitley County, Kentucky, and that the

plaintiff failed to comply with the promise to deliver the engine on board the cars on the fifth day of March, and did not, in fact, do so until the twentieth day of March, 1911, or fifteen days thereafter, and that the plaintiff at the time the contract was made was then and there notified by the defendant that it would be unable to operate its manufacturing plant until it received the engine and that the delivery thereof on board the cars on the fifth day of March, 1911, for immediate transportation was imperatively necessary, and that any considerable delay in the delivery of the engine would inevitably result in a loss of profits in its business and would in all probability likewise result in a deterioration of the material on hand for use in the manufacturing of staves, then you should find for the defendant on its counterclaim such a sum, if any, as you may believe from the evidence would fairly and reasonably compensate it for the loss of profits, if any, so resulting, and the deterioration, if any, of the material then on hand for use in manufacturing staves, not exceeding in all the sum of $1,103.50, which is the amount defendant is seeking to recover on its counterclaim, but unless you so believe from the evidence you will find nothing for defendant on its counterclaim.''

The specific objection urged by appellant to this instruction is, that it does not confine the recovery of the damages claimed by appellee to such loss of profits, if any, and the deterioration, if any, of the material then on hand for use in manufacturing staves, to the fifteen days during which the delivery on board of cars for shipment of the engine sold it by appellant, was alleged to have been delayed by the latter. The objection is well taken, for the error is patent and one that was well calculated to mislead the jury. As to the question of damages made by the appellee's counterclaim, we, in the opinion on the former appeal, said:

''It is apparent from the averments of the answer and counterclaim that the special circumstances under which the contract was made, were communicated by appellant (Carson-Muse Lumber Company), to appellee (Fairbanks, Morse & Company), at the time of its purchase of the engine; that is, that appellant would be unable to operate its manufacturing plant until it received the engine; that its delivery on the car March 5th, 1911, for immediate transportation to appellant's manufactory was imperatively necessary, and that any considerable delay in the delivery of the engine would inevitably result in a

loss of profits in the latter's business, and, in all probability, likewise result in a deterioration of the material on hand for use in manufacturing staves. Therefore, it may well be said that of the damages alleged, loss of profits to appellant's business and the deterioration in value of the material on hand, during the fifteen days' delay in delivering the engine, were such as the parties reasonably contemplated would result from its breach. Cases may be found, a few of them in this jurisdiction, but the greater number in other jurisdictions, which hold that the acceptance by the purchaser of goods or machinery after the time fixed by the contract for its delivery, constitutes a waiver of any cause of action for damages the purchaser might have maintained for the seller's breach of the contract, had he refused to receive the property and sued for breach of contract; but examination of these cases will show that the circumstances attending the delivery of the article sold were such as to establish the waiver. In the case under consideration, however, the circumstances are wholly different, for the facts alleged in the answer and counterclaim charge that appellee sold the engine for specific and immediate use; that delivery thereof was to be made within three days of the date of the sale, and that the failure to deliver the engine at the time indicated would obstruct appellant's business and cause it loss and damage. If the above facts alleged in the answer and counterclaim are made to appear in evidence they will entitle appellant to some part of the damages claimed by it. So in the case here presented by the pleadings appellant by accepting the engine after the delay in its delivery, did not waive the right to assert by counterclaim its claim to the damages resulting from its delayed delivery. It, therefore, follows, that the circuit court erred in sustaining the demurrer to the answer and counterclaim, and also in rendering the judgment complained of.''

It will be observed that the instruction in question does not, as directed by the opinion, *supra,* confine the recovery of appellee's damages to loss of profits and deterioration in value of material arising during, or by reason of, the delay of fifteen days in the delivery of the engine on board of the cars, and this omission may have misled the jury into the belief that they were authorized, under the instruction, not only to allow appellee such damages as arose in the particulars named from the deday of fifteen days in the delivery of the engine on board

cars at Cincinnati, which is the only ground for damages appellee relies on, but also such as it sustained by the loss of profits and deterioration in the value of material during or from any subsequent delay in the transportation of the engine by the railroad company.

It appears from the evidence introduced in appellee's behalf that the frequent rains, freezes and sudden weather changes of March, the month in the early part of which appellant was to deliver to it the engine for operating its stave manufactory, produce conditions that quickly injure timber, particularly such as has been converted into "bolts" for the manufacture of staves, causing it to check (i. e., crack) into seams and rents; and that appellee had on hand during the fifteen days appellant delayed the delivery of the engine enough bolts to make ninety thousand staves, which bolts were so injured by checking during the fifteen days as to reduce the staves made from them from first to second class staves, thereby greatly depreciating their market value; one or more witnesses putting such reduction of value at from $65.00 to $24.50 per thousand. Other evidence in appellee's behalf conduced to prove further loss sustained by it in its business, because of its having no engine to operate its plant during the fifteen days appellant delayed the delivery of the engine purchased by appellee of it; some of this evidence being to the effect that the latter, if it had been in possession of the engine during the time, it is claimed, appellant delayed its delivery, could have made, by operating its plant, seven thousand staves per day, at a clear profit of $1.00 per thousand, or $7.00 per day. But the evidence as to the deterioration in the value of the timber during and caused by the delay of fifteen days in appellant's delivery of the engine, seems to have been more especially relied on as a basis for the claim to damages made by appellee. Upon another trial of the case the court should change and correct instruction No. 2 so that it will read as follows:

If the jury believe from the evidence that the defendant on or about March 2, 1911, purchased of the plaintiff an engine for operating its stave manufactory, with the understanding on its part and the promise on the part of the plaintiff, that plaintiff would deliver the engine on board the cars at Cincinnati, Ohio, March 5, 1911, for immediate transportation to the defendant at its place of business in Whitley County, Kentucky; and that the plaintiff failed to comply with its promise, if

any, to deliver the engine on board the cars at Cincinnati, March 5, 1911, and did not in fact do so until March 20, fifteen days thereafter; and shall further believe from the evidence that the plaintiff at the time the contract was made was then and there notified by the defendant, that it would be unable to operate its manufacturing plant until it received the engine; and that the delivery thereof on board the cars at Cincinnati March 5, 1911, for immediate transportation to defendant was imperatively necessary, and, that any considerable delay in the delivery of the engine, would inevitably result in a loss of profits to it in its business and, in all probability, result in depreciation in value of the material on hand for use in manufacturing staves, then they should find for the defendant on its counterclaim, such a sum, if any, in damages, as they may believe from the evidence will fairly and reasonably compensate it for the loss of profits, if any, in its business and such deterioration, if any, in the value of the material then on hand for use in manufacturing staves, as directly resulted to the defendant during, or from, the delay of fifteen days, caused by the failure, if any, of the plaintiff to deliver the engine on board the cars at Cincinnati March 5, 1911. But such damages, if any are allowed the defendant, should not exceed $1,103.50, the amount asserted by its counterclaim. On the other hand, unless the jury believe from the evidence that the defendant has been damaged by the plaintiff as predicated in this instruction, they should allow no part of its counterclaim.

It appears from the evidence that the engine sold the defendant by plaintiff was loaded on the cars at Cincinnati March 20, 1911, but was not started to its destination by the railroad company until the next day, March 21, nor received by appellee until March 28th. If this interval of seven days between March 20th and 28th, be regarded an additional delay in the shipment of the engine to appellee, it was delay caused by the railroad company undertaking its transportation, and appellant is not liable for any injury to appellee's business or for any deterioration in its stave timber that may have occurred during or by reason of this interval or delay of seven days. If appellant is liable at all, it is for such damages as were sustained by appellee, in the particulars claimed by it, during, or because of, the delay in delivering the engine on board the cars, covering the interval, or some part thereof, between March 5th and

March 20th. But as the jury, unless advised to the contrary, may confuse the delay of seven days in the shipment by the railroad company of the engine from Cincinnati to appellee's place of business, with the alleged delay of fifteen days on the part of appellant in the loading of the engine on board the cars at Cincinnati, the court, in addition to corrected instruction No. 2, set out above, and instructions 1, 3 and 4, in the form used on the last trial, should further instruct the jury as follows:

The jury are further instructed that the appellant is not liable for any damages that appellee may have sustained, either by way of loss of profits in its business or deterioration in the value of its stave timber, during or resulting from the delay, if any, on the part of the railroad company in transporting the engine to appellee's place of business in Whitley County, after it was delivered by appellant on board the cars at Cincinnati.

For the reasons indicated the judgment is reversed and cause remanded for a new trial consistent with the opinion.