## Viall et al. v. Pepples et al.

(Decided May 31, 1938.)

JAMES H. JEFFRIES, CLEON K. CALVERT, M. C. BEGLEY and TUGGLE & TUGGLE for appellants.

KELLY J. FRANCIS and CRAFT & STANFILL for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

J. C. Pepples, Harry Hill, and J. B. Foster, trustess of the First National Bank of Stanford, Ky., brought this suit in the Leslie circuit court against O. H. Viall, J. Leon Nuckols, and James H. Jeffries to quiet the bank's title to five tracts of land in Leslie county, which were described in the petition, and to enjoin the defendants from entering upon and cutting or removing any timber from the said land. The cir-

cumstances leading up to the litigation, briefly stated, were as follows:

A. J. Asher borrowed from the First National Bank of Stanford, Ky., $4,500, and executed to the bank three notes for $3,000, $1,000, and $500, respectively. The notes were renewed from time to time, and J. Leon Nuckols, son-in-law of A. J. Asher, signed them as surety. There is some dispute as to whether he signed the original notes, but that is not material. The last renewals were one $3,000 note dated October 26, 1931, due on demand; one $500 note dated October 15, 1931, due four months after date; and one $1,000 note dated October 28, 1931, due four months after date. The original indebtedness was created several years before the execution of the last renewal notes, and the bank was insisting that it should be paid. J. Leon Nuckols offered to bring suit against the principal, A. J. Asher, under sections 237 and 661 of the Civil Code of Practice, and on December 10, 1931, he filed an equitable action in the Bell circuit court against Asher and the bank in which he asked for a judgment against Asher for the benefit of the defendant First National Bank of Stanford. Both Asher and Nuckols were residents of Bell county. Nuckols employed the appellant James H. Jeffries, an attorney at law, to institute the action. It was alleged in the petition that the plaintiff therein, J. Leon Nuckols, was surety for A. J. Asher on the three notes held by the bank, and that Asher had sold his property and was suffering and permitting it to be sold with the fraudulent intent to cheat, hinder, and delay his creditors, and that he was about to sell, convey, or otherwise dispose of his property with such intent. On October 10, 1932, a judgment was rendered in that action in the Bell circuit court providing that A. J. Asher should, within ten days of the date of the judgment, pay to the defendant the First National Bank of Stanford, Ky., the face amount of the three notes held by it, with interest thereon, and that if payment was not made within ten days execution was to be issued on the judgment in the name of the plaintiff J. Leon Nuckols, but for the use and benefit of the First National Bank of Stanford, Ky. Asher failed to pay the judgment, and an execution was issued which was returned by the sheriff of Bell county with the indorsement thereon, "no property found". An affidavit to the effect that Asher had no property in Bell county subject to execu-

tion was filed, and an execution directed to the sheriff of Leslie county was caused to be issued. This execution was levied on the five tracts of land in Leslie County here in dispute. The execution was dated November 10, 1932, and was in favor of J. Leon Nuckols for the use and benefit of the First National Bank of Stanford, Ky. The property was sold on January 16, 1933, and was bid in by Nuckols. On February 6, 1933, J. Leon Nuckols assigned the judgment, which had been obtained in the Bell circuit court, to the First National Bank of Stanford by the following indorsement on the margin of the judgment book: "For value received, I hereby assign and transfer the within judgment (against) A. J. Asher to the First National Bank of Stanford, Ky. February 6, 1933. J. Leon Nuckols." The property failed to bring two-thirds of its appraised value when sold by the sheriff of Leslie county under the execution, and, consequently, the deed was not executed until after the expiration of the one year period of redemption. On February 9, 1934, the sheriff of Leslie county executed a deed which recited that the execution came to the hands of the sheriff of Leslie county on November 12, 1932, while the execution was in full force; that it was levied by the sheriff on the lands therein described; and that the property was sold on January 16, 1933, to J. Leon Nuckols, the plaintiff in the execution, for the sum of $4,997.65. Following the description of the land, the deed contained the following:

"The said lands above described, however, are hereby conveyed, to the said J. Leon Nuckols, subject to the following assignment in writing, which was executed and acknowledged by said J. Leon Nuckols, on February 23, 1933:

"For value received the undersigned, J. Leon Nuckols, plaintiff in the above styled cause, hereby assigns, transfers and sets over to the Defendant, The First National Bank of Stanford, Kentucky, the Judgment, execution, levy and the benefit of my bid and purchase of the real property mentioned and described in the return, as security for the full payment of said judgment debt, interest and costs, the said First National Bank of Stanford, Kentucky, being the real and beneficial owner of the said judgment debt, interest and costs."

This deed was recorded March 14, 1934. Prior to

the execution of the deed, the First National Bank of Stanford, through its officers and attorneys, had some correspondence with the appellant. James H. Jeffries concerning the collection of the judgment. The officers of the bank were under the impression that bonds had been executed by the purchaser, and they inquired concerning the collection of these bonds. On January 29, 1934, Mr. Jeffries wrote to the attorney for the bank stating that no sale bonds were executed when the land was sold, since the successful bidder at the sale was J. Leon Nuckols, the plaintiff in the execution, and he purchased the land for the debt, interest, and costs, and therefore no bond was required. Mr. Jeffries also stated in the letter that Nuckols "made a written assignment of his bid and purchase to the bank, with the proviso that if he pays the bank's debt and interest that the land should be reconveyed to him, Nuckols." It will be noted that the assignment indorsed on the margin of the judgment contains no such proviso. In this letter Mr. Jeffries also stated that he was well acquainted with the land, and he was sure that during anything like normal times the land was worth considerably more than the bank's debt. On January 30, 1934, the attorney for the bank acknowledged receipt of Mr. Jeffries' letter, and stated that the bank felt it should then have a deed made to it for the property. Concerning the proviso referred to in Mr. Jeffries' letter, he said:

"Now, as to the transfer to the Bank by Mr. Nuckols, upon condition that if he pays the Bank debt and interest, the land should be re-conveyed to him. I suppose Mr. Nuckols has had ample time to pay this debt. He has failed *to so*. The Bank would now like to have a straight deed to the property, and would not be willing to accept deed, with the proviso that if Mr. Nuckols, at any time pays its debts, the land shall be by the Bank reconveyed to him. The Bank may secure a purchaser soon or may have, as you state a considerable time and so wants to be in condition to convey clear title."

On March 16, 1934, Mr. Jeffries sent the deed, which had been recorded in the Leslie county clerk's office, to the bank, and, on the following day, the attorney for the bank wrote to him stating that the deed was not at all what the bank expected, as it was not in compliance with its agreement with Mr. Nuckols. He

stated that the bank was insisting that it was entitled to have a deed to the land in accordance with the agreement. In response to this letter, Mr. Jeffries wrote to the attorney for the bank stating that a deed would not be made to the bank "until and unless the bank first pays my attorney's fee and all court costs incurred and fully releases J. Leon Nuckols as surety on the note." The correspondence between Mr. Jeffries and the bank continued for more than a year without satisfactory results. The bank continued to insist that it was entitled to a deed to the property by virtue of J. Leon Nuckols' assignment of the judgment and his bid and its agreement with him, and in September, 1935, appellant James H. Jeffries, for the first time, notified the bank that he was claiming a one-half interest in the land by virtue of a tax deed executed to him in 1910. In the meantime, the attorneys for the bank and its officers made several trips to Mr. Jeffries' office in Pineville for the purpose of having the legal title to the land conveyed to the bank. At none of the conferences did Mr. Jeffries intimate he was claiming an interest in the land. He always insisted that the bank's debt was amply secured, and stated that he and Nuckols were endeavoring to sell the land for an amount sufficient to pay the bank's debt, the costs, and his attorney's fee. On January 10, 1936, appellant Jeffries and wife executed to appellant O. H. Viall a deed conveying to him the title to the five tracts of land in dispute. The deed contained a covenant of special warranty. A lien was retained on the land to secure the payment of three promissory notes, aggregating $2,000, which were made payable to appellant's wife, Mary H. Jeffries. On the same day, that is, January 10, 1936, appellant J. Leon Nuckols and appellant O. H. Viall entered into a written contract, by the terms of which Nuckols undertook to sell to Viall a one-half interest in the white oak timber on the five tracts of land. The contract recited that Nuckols was the legal owner of an undivided one-half interest in fee in the land. Shortly after these transactions occurred, the trustees of the bank instituted this action. The defendants, in an answer and counterclaim, denied that the bank had title to the land, and alleged that it had only a lien on Nuckols' undivided one-half interest therein, and that Nuckols owned an undivided one-half interest in fee in the land and James H. Jeffries owned the remaining one-half interest in fee at the time the bank acquired its lien, and that his interest

had been conveyed to O. H. Viall. They asked that Nuckols and Viall be adjudged to be the owners of the land. James H. Jeffries also sought to assert a lien on the undivided one-half interest of Nuckols for $1,500 for his attorney's fee. In a cross-petition, the defendants made A. J. Asher and A. J. Duff parties to the action. It seems that Duff was claiming certain parts of the land. A number of pleadings were filed completing the issues, and a large amount of proof was heard. Upon submission of the case, the court adjudged the bank to be the owner of the land except a small amount which was adjudged to A. J. Duff. The defendants' counterclaim was dismissed, and the claim of Mr. Jeffries, by which he asserted that he was entitled to a lien on a one-half interest in the land for his attorney's fee, was also disallowed.

We deem is unnecessary to discuss the many ramifications of the title to the land in controversy. It is sufficient to say that there is evidence that A. J. Asher had both paper title to the land and title by adverse possession at the time it was sold in 1932. In a stipulation signed by the attorneys for appellants and appellees, the following appears:

"It is further agreed and stipulated that A. J. Asher obtained his title to the one-half undivided interest in these lands set out in the petition in this case, which said deed is made to A. J. Asher, and W. J. Hodges by Deed Recorded in Deed Book No. 15, page 147 Leslie County Court Clerk's office, and dated August 26, 1903, and that R. C. Ford obtained his title to his one-half interest in the same lands by deed dated September 17, 1906, recorded in deed Book No. 17, page 239 Leslie County Court Clerk's Office, and which said deed was executed by the Master Commissioner of the Bell Circuit Court, in an action then pending in that said court, and that both Ford and Asher have title deducible from Abner Turner, the patentee of the lands in question and thereafter and on July 20, 1912, by a Deed recorded in Deed Book No. 23, at page 265, R. C. Ford conveyed his interest in these lands to A. J. Asher, a certified copy of which Deed is filed in this Record, and made a part of this record, and that A. J. Asher, by a judgment of the Leslie Circuit Court, wherein he was a Plaintiff and Willa Jean Hodges was defendant, became the purchaser of

the interest of W. J. Hodges, in and to the said lands, and the orders of the Leslie Circuit Court show that a Deed conveying the interest of W. J. Hodges was executed to the said A. J. Asher, but, as is shown in another stipulation prepared by Attorney for the defendants, such deed has never been delivered by the said Master Commissioner to the said A. J. Asher.

"It is further stipulated that since the date of the deed to R. C. Ford, on September 17th, 1906, the said Ford and Asher have claimed to and will testify that they have been in the actual, continuous possession of all of these lands thru their tenants."

Appellant James H. Jeffries claims that an undivided one-half interest in the land was sold for taxes in 1910; that he became the purchaser; and the master commissioner of the Leslie circuit court executed a deed to him on May 18, 1910. Jeffries was the attorney for the commonwealth in the action in which the sale was made. It is extremely doubtful whether he acquired any title by the master commissioner's deed, since it purported to convey the title of persons against whom a judgment had not been taken. It does not appear that he exercised any acts of ownership in the land until he attempted to convey an interest in it to O. H. Viall in 1936, twenty-six years after the tax deed was made. In 1930 he represented the Inter-Mountain Coal & Lumber Company in an action in the District Court of the United States for the Eastern District of Kentucky,[1] in which both his client and A. J. Asher were claiming title to the land. In that action, the deed executed by the master commissioner to James H. Jeffries on May 18, 1910, was involved. It was adjudged by the United States District Court in that action that A. J. Asher was the owner of the land. But, even if it be conceded that Jeffries acquired an interest in the land by virtue of the 1910 deed, we have concluded that he is estopped to claim any interest therein as against the appellees. Over a period of more than three years, when he was representing Nuckols in an action brought by Nuckols for the use and benefit of the bank, he led the bank to believe that he was claiming no interest in the land. Under the circumstances, he owed to the bank the duty to deal fairly and openly with it, and to disclose any

[1] No opinion for publication.

interest he claimed in the land in order that the bank might take such steps as might be necessary to secure the payment of the debt.

It is an elementary principal that one who stands by and knowingly permits or encourages another to purchase his property from a third person, and gives no indication that the land is his, is estopped from afterward asserting his title against the purchaser. Inter-Mountain Coal & Lumber Co. v. Boggs, 247 Ky. 123, 56 S. W. (2d) 705; Neeley v. Guthrie, 236 Ky. 81, 32 S. W. (2d) 567; Asher v. Mosley, 201 Ky. 703, 258 S. W. 320; Saylor v. Kentucky-Cardinal Coal Corp., 205 Ky. 724, 266 S. W. 388, 50 A. L. R. 666. Appellants insist that this rule does not apply, since Jeffries' deed had been recorded, and the bank therefore had constructive notice of his claim. In view of the circumstances and the relation existing between Jeffries and the bank and the doubtful efficacy of the deed under which he claims, it was his duty to make a full disclosure of the facts. The appellant Viall occupies no better position than appellants Nuckols and Jeffries. He entered into the contract with Nuckols, and accepted the deed from Jeffries with full knowledge of the facts. He knew all about the dispute, and had made one or more trips to Stanford for the purpose of purchasing the bank's interest in the land. He knew the bank claimed to be the owner.

We think the circuit court correctly adjudged that the bank was entitled to the land, and further that it was not indebted to appellant Jeffries for an attorney's fee for his services in connection with the case of Nuckols against Asher and the bank in the Bell circuit court. Nuckols, as surety on the notes, was liable to the bank for the entire debt. The bank did not sue him on the notes, but permitted him to bring an action for its benefit in the Bell circuit court to force the principal to pay the indebtedness. The services rendered by the attorney in that action were rendered for Nuckols.

The judgment is affirmed.