## Chesnut v. Allen.

March 1, 1940.

W. E. Begley, Judge.

704

Luker & Begley for appellant.

T. H. Webb for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

The appellee, Sallie Allen, the plaintiff below, filed a petition in equity against the appellant, Steve Chesnut, to quiet her title under Section 11 of the Kentucky Statutes, to a tract of land located in Laurel County. Chesnut in his answer and counterclaim denied plaintiff's title and asserted title in himself. Issues were joined by proper pleadings, proof was taken, and upon a submission of the case, the chancellor adjudged title in the plaintiff.

On this appeal defendant seeks to reverse the judgment on the following grounds: (1) The plaintiff had actual knowledge of his unrecorded deed at the time she bought this land, and was not an innocent purchaser;

(2) that after the deed was signed and acknowledged under which plaintiff claims, the instrument was materially altered, therefore it became void; (3) the grantor lacked mental capacity to make the deed; (4) plaintiff obtained her deed through fraud and undue influence. There is no evidence that the grantor lacked mental capacity, or that the plaintiff obtained her deed by fraud or undue influence, therefore, we will only consider the first two errors assigned.

Much incompetent evidence was introduced on both sides and while each party made objections to such, as noted by the notary taking the depositions, no exceptions were filed, and the competency of the evidence was not submitted to, or ruled upon by, the chancellor. An objection to such evidence cannot be made for the first time in this court. To save an objection to incompetent evidence in an equity case, one must file written exceptions thereto, obtain the ruling of the chancellor thereon, and reserve exceptions to the rulings, Civil Code of Practice, Sections 586-589; Roberson v. Roberson, 183 Ky. 45, 208 S. W. 19; Black v. Noel's Adm'x, 240 Ky. 209, 41 S. W. (2d) 1100; Potter v. Mullins, 267 Ky. 822, 103 S. W. (2d) 274.

Both parties claim through a common grantor, Jacob Chesnut, who was divorced from his wife and who was the father of the defendant. For the recited consideration of grantee taking care of his mother, the divorced wife of the grantor, Jacob Chesnut executed a deed to the defendant on Feb. 5, 1931, wherein he conveyed his entire farm of 93 acres, reserving to himself a life estate. On April 26, 1932, Jacob Chesnut conveyed 30 acres of this 93-acre farm to the plaintiff in consideration of $250, of which $50 was paid in cash and the balance was to be paid in small installments over a period of two years. All negotiations for the purchase of this 30 acres were conducted by plaintiff's husband and she did not testify, but her husband testified as agent of his wife, as is permitted by Section 606, Subsection 1, Civil Code of Practice.

Defendant's testimony was to the effect his father delivered his deed to him in September, 1931, with the request that it not be recorded until after grantor's death, since he desired to keep from his other children knowledge of this conveyance; that his father died

November 30, 1935, and that he recorded his deed on December 2, 1935; that Allen came to him before purchasing the 30 acres for his wife, and defendant informed Allen on two occasions that he held a deed to the farm and his father could not convey good title thereto.

Allen testified defendant never mentioned to him the fact that his father had executed a deed conveying this land to him until after the old gentleman's death, and that he purchased the land for his wife for a valuable consideration in good faith and in total ignorance of any claim defendant' had to same. Plaintiff's deed was recorded on May 15, 1934, which was about one year and six months before defendant recorded his deed.

There being a direct conflict between defendant and Allen on the pivotal point of whether defendant had informed Allen that he held a deed to this property before Allen purchased the 30 acres, and as there is no direct evidence supporting or contradicting either Allen or the defendant, it is necessary to turn to the surrounding facts and circumstances in determining whether the chancellor erred in finding in favor of the plaintiff.

Leander Lewis testified he ran a saw mill and he, Allen and Jacob Chesnut made a contract whereby Allen logged the timber from the farm of Chesnut, Lewis sawed it, and each received one-third of the lumber; that defendant was present while the timber was being cut and made no complaint. Jacob Chesnut conveyed to McPhetridge some of the land included in defendant's deed; also, on July 7, 1931, by an instrument recorded on that date, he mortgaged his farm to Humfleet for $100. The defendant registered no 'objection to either of these transactions. Defendant knew his father signed bonds in court and he further knew the only property the old man had subject to execution was this very land for which he held a deed, yet he never registered a complaint to his father signing such bonds. After remaining passive to all of these acts of his father, we cannot understand why he should suddenly become aroused and notify Allen, not once but twice, that he held a deed to his father's farm. Also, it is most difficult to understand why Allen in the face of such information would purchase 30 acres for $250 and continue making small payments thereon for two years until he satisfied the full purchase price. It is contrary to human experience

that Allen would do so, as no sensible man would buy land where he received advance warning he would obtain no title. The proof is ample to support the finding of the chancellor that the defendant did not notify Allen, before he purchased this land for his wife, that defendant held a deed to it, and we will not disturb that finding.

We conclude Allen was without actual knowledge of the unrecorded deed of the defendant at the time this 30 acres was purchased, and as plaintiff's deed was recorded before defendant's deed was put to record, plaintiff has the superior title. Kentucky Statutes, Section 494; Dozier v. Barnett, 13 Bush 457, 76 Ky. 457; Morgan v. Big Woods Lumber Co., 198 Ky. 88, 249 S. W. 329. Also, it is elementary that one who stands by silently and sees another purchase property from a third person, without giving information that the property is his, is estopped from asserting title against the purchaser. Simpson v. Yocum, 172 Ky. 449, 189 S. W. 439; Viall v. Pepples, 274 Ky. 599, 119 S. W. (2d) 860, and cases therein cited. Therefore, defendant would be estopped from asserting title to the 30 acres described in the plaintiff's deed.

The proof shows that after Jacob Chesnut signed and acknowledged the deed, Mrs. Allen refused to accept it because it did not expressly convey to her the royalty reserved in a mineral deed previously given on this land. Thereupon Jacob had a lawyer insert in this deed a provision that the royalty was reserved by him for life and at his death same passed to Mrs. Allen. Defendant's contention is unfounded that this is such an alteration of the deed as makes it void. He overlooks the fact that this alteration was made by the grantor, and at the request of the grantee. He cites 2 Am. Jur. 601, Section 9, to support his position that the alteration made this deed void, but this text recites an alteration voids an instrument when made "without the consent of the party sought to be charged thereon." Where there is an alteration of a written instrument after it is executed, the burden is on the party producing it to show the alteration was made by agreement. Hoskins v. Northern Lee Oil & Gas Co., 194 Ky. 628, 240 S. W. 377. The lawyer who made this alteration was clear and convincing in his testimony that he made it with the con-

sent and at the direction of the grantor. In Hunt v. Nance, 122 Ky. 274, 92 S. W. 6, 28 Ky. Law Rep. 1188, we wrote that an interlineation made in a deed by consent of parties after it was acknowledged and delivered, but before recordation, did not affect its validity as between the parties.

The judgment is affirmed.