## Chesnut v. McPhetridge et ux.

Feb. 28, 1941.

C. R. Luker for appellant.

T. H. Webb for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

This action, filed by the appellant, Steve Chesnut, against the appellees, William McPhetridge and his wife, is the same character of action in all respects as that in Chesnut v. Allen, 282 Ky. 703, 139 S. W. (2d) 729, and the issues are identically the same except that here there is no question of alteration of the deed. Reference is made to the opinion in that case for a full and complete statement of the issues and the nature of evidence.

Not only are the questions the same but we have the same character of evidence, largely by the same witnesses. This action merely involved another tract of land, containing 12 acres, conveyed by Jacob Chesnut to William McPhetridge on October 29, 1932, the 12 acres being a part of the land covered by appellant's unrecorded deed which was executed in September, 1931. Here, as in the other case, appellant testified that he informed McPhetridge of his unrecorded deed before the execution of McPhetridge's deed. This was denied by McPhetridge. We have here the same surrounding

facts and circumstances as in the other case supporting the chancellor's finding that McPhetridge, when he accepted his deed, had no actual knowledge of appellant's unrecorded deed.

In this case, however, we have the testimony of R. B. Johnson, which did not appear in the other case, and great stress is placed on this testimony as showing McPhetridge's actual knowledge of the unrecorded deed. Mr. Johnson, an attorney, drafted appellant's unrecorded deed from Jacob Chesnut and also drafted McPhetridge's deed for the 12 acres. He testified that McPhetridge and his father, who was acting with McPhetridge in the purchase of the 12 acres, came to his office with Jacob Chesnut to have the deed drafted. Remembering that he had previously drafted appellant's unrecorded deed covering the same land, he mentioned this fact to Jacob Chesnut and asked him how he was going to reconcile the 12-acre deed with the previous deed he had executed to appellant. He was given to understand that Jacob Chesnut considered that he had a right to convey the 12 acres by reason of the fact that he had not delivered the previous deed to appellant. Mr. Johnson also testified that it was his judgment that Jacob Chesnut, by virtue of the provisions of the previous deed to appellant, had the right to convey any part of the land during his lifetime and therefore proceeded to draft the deed conveying the 12 acres to McPhetridge.

When asked if there was anything said by him to McPhetridge's father at the time of the execution of the deed regarding the execution of appellant's prior deed, Mr. Johnson said that he did not think there was anything said to him but that something was said to old man Chesnut and that he thought McPhetridge, Sr. was there all the time. When asked whether McPhetridge, Sr. heard his conversation with Jacob Chesnut he said "I don't know whether he heard it" and when asked "Was he there in the room" replied "My impression was that he was there." Mr. Johnson also testified that at one time after the execution of McPhetridge's deed he was requested by one or both of the McPhetridges to try to get a quitclaim deed to the 12 acres from appellant and that he did talk to appellant about it and tried to get the matter settled. He did not know whether this was before or after Jacob Chesnut died.

We do not regard the testimony of Mr. Johnson as

sufficient to justify a finding that appellant or his father had actual knowledge of the unrecorded deed in view of the witnesses's uncertainty as to whether or not the conversation with Jacob Chesnut was heard by either of the McPhetridges. As a matter of fact the witness stated William McPhetridge had left his office when this conversation occurred and states positively that he did not know whether the elder McPhetridge heard the conversation. Mr. Johnson's testimony that he later attempted to get a quitclaim deed from appellant is obviously insufficient to indicate that William McPhetridge at the time of the execution of his deed knew of the unrecorded deed. Probably several years had intervened at this time and he may have learned of appellant's unrecorded deed from many sources.

We cannot escape the conclusion that here, as in the other case, the chancellor correctly decided that the evidence was insufficient to establish actual knowledge of the unrecorded deed. At the most, we might be willing to say that the evidence is such as to leave in our minds a doubt on this question and under our well known rule of practice it is clearly our duty, when such is the case, to affirm the chancellor's finding.

There was an utter failure to establish that undue influence was exerted on Jacob Chesnut in obtaining the deed for the 12 acres. Further, there was an utter lack of evidence establishing mental incompetency of Jacob Chesnut. The evidence merely showed that he got drunk quite frequently but it also established that he was not drunk at the time of the execution of the deed.

Judgment affirmed.