## Duff v. Fordson Coal Co.

October 20, 1944.

C. W. Hoskins for appellant.

M. C. Begley for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

The appellee, Fordson Coal Company, hereinafter referred to as "the Company," instituted this action in equity against the appellant, A. J. Duff, to enjoin trespassing, to recover the value of timber cut, and to quiet its title to the land. By answer and counterclaim appellant traversed the allegations of the petition, described the land claimed by him, and asked that he be adjudged the superior title where the patents, under which the respective parties claimed, overlapped. Proof was taken by depositions, and upon final submission to the Special Chancellor it was adjudged that the Company owned the land described in the petition, except a portion thereof which was covered by a patent issued to Abner Turner for 500 acres, the title to which was adjudged to be in the appellant. The judgment dismissed without prejudice that portion of the petition which sought a recovery for the timber cut.

After the expiration of the term at which the judgment was rendered, appellant filed a petition under Section 518, Civil Code of Practice, seeking a new trial on the ground of newly discovered evidence, which he alleged he had been unable to discover by the exercise of due diligence until after the trial. The Company's answer was a traverse. The depositions of the newly discovered witnesses were taken, the proceedings in the original action were made a part of the record, and, upon submission to the regular Chancellor, a judgment was rendered dismissing the petition.

The land in dispute lies on both sides of White Oak Creek, a tributary to Greasy Fork of the Kentucky River, formerly in Harlan County but now in Leslie County, and comprises something less than 100 acres. The Company claims title under several patents, all of which are junior to an Abner Turner patent for 600 acres, surveyed on November 6, 1851, and issued on May 28, 1853, through which appellant deraigns his title. Hence, the crucial question is, whether the Abner Turner 600-acre patent embraces the land in dispute; and the key to the controversy is the correct location of the 600-acre Abner

Turner patent which is not to be confused with the 500-acre patent heretofore mentioned. The patent recites that the land is situated on White Oak Creek, "Beginning on the top of a ridge between Lewis Creek and said White Oak at a sourwood and a chestnut oak." It has 23 calls, and the first 16, with the exception of the 7th, 11th, 12th, and 14th, specify timber markers. It appears from the record that only the first 16 calls were run out on the ground, and that the remaining 7 were platted.

Without reproducing the plats filed as exhibits it is obviously impossible to adequately portray the differences between the locations of the 600-acre patent contended for by the opposing litigants, the relative situations of these locations with respect to the ridges and creeks referred to in the patent, or the conflicts and discrepancies resulting from the attempted establishment by reversed compass calls, of points originally marked by timber since removed, or not susceptible to positive identification. For this reason, little could be accomplished by reciting the conflicting testimony of the opposing witnesses as to what Abner Turner and his relatives said to them regarding the beginning point of the survey. If that testimony, and other testimony of a similar nature, is to be regarded as controlling—though we think it preponderates in favor of appellant's contention—we might well apply the rule that where the mind is left in doubt as to the correctness of the Chancellor's fact-finding, that finding will not be disturbed. But the record discloses facts which, it seems to us, are of sufficient importance to demand careful consideration before resorting to the less arduous method of solving the controversy.

Until a comparatively recent date the location of the 600-acre patent, as contended for by appellant and shown by surveys made in 1887 and subsequent years appears to have been acquiesced in by all parties having any interest in the embraced and adjoining lands. It is true that R. L. Dixon, a surveyor formerly employed by the Company and now its main witness, claims that the correct beginning corner, as now located by the Company, was pointed out to him in 1917, but his own testimony shows that subsequently, in that year and on one or more occasions thereafter, while employed to make surveys and maps for different persons, he adopted the location of the patent as it had been previously

shown. Not until 1926 did he reach the conclusion that the theretofore recognized location of the patent was erroneous, notwithstanding which fact he in 1933, according to appellant's testimony, ran the lines and furnished appellant with a map showing the location as contended for by the latter. It is also true that C. G. McQueen, a surveyor and the Company's manager, testified that he likewise in 1920 discovered the error in the original and long accepted location of the 600-acre patent and made a map showing the true location, and that Frank Bowling, also a surveyor and employee of the Company, testified that he made a survey in 1937 with similar results. The substance of their testimony is that at what they are now convinced is the true beginning point, they found "a marked sourwood and a down chestnut oak"; that 346 feet from the 9th corner, as located by running the courses and distances from what they had determined was the true beginning point, there were found a marked water oak and a dead chestnut, the markers called for by the patent at the 9th corner; that while they did not find at the 15th corner, as so located the called for "2 spruce pines" on the top of the ridge between Lewis Creek and White Oak Creek, they did find several small pines from 2 to 5 inches in diameter on a spur leading off from that ridge, which spur, they contend Abner Turner intended to designate; and that, starting from the 15th corner, as located by the appellant, and surveying in both directions, no timber markers called for in the patent were found, nor was the beginning corner found to be on the dividing ridge between Lewis and White Oak Creeks, but 200 feet to the side thereof. But giving due weight to all the objections urged to the original and long accepted location, the beginning point of which is approximately 3-5 of a mile from the beginning point as now fixed by them, we do not think that the testimony of Dixon and McQueen is sufficiently convincing to overcome the presumption of correctness attaching to the older surveys by reason of their long acceptance and other salient facts which we shall enumerate.

As located by appellant and the older surveys, all of the land embraced within the 600-acre patent is on White Oak Creek as stated in the patent itself. Located as the Company now contends it should be located, only one-fourth of the land is on White Oak Creek. Moreover, the 15th call of the patent is "West 51 poles to

2 spruce pines on the top of the ridge between Lewis Creek and White Oak''; and the fact that until recently there were two spruce pines reasonably answering this description standing on the top of the ridge between Lewis Creek and White Oak Creek is overwhelmingly established by the proof. McQueen himself testified that when he was there in 1920, ''there were 2 spruce pines standing about 80 feet apart''; and he also admitted that, ''If the grant is located by placing the 15th corner at the point on top of the ridge between White Oak Creek and Lewis Creek designated on my map by '2 Spruce Pines' and the subsequent lines of the grant run from that point, then the grant (as originally located) will cover and be the senior paper title to the substantial portion of the lands in conflict.'' It should also be noted that the Company's present location of the same corner is not on the main ridge but a distance of 2341 feet from the top of that ridge at its nearest point and on a spur between two forks or branches of Lewis Creek, and a distance of approximately 3500 feet from the 2 spruce pines. A recognition of the importance of these facts is inescapable in view of the established rule thus stated in America Jurisprudence, Vol. 8, Section 54, Page 785:

''Whenever natural monuments or objects, which include mountains, rivers, creeks, and rocks, are distinctly called for and satisfactorily proved, they become landmarks to which preference must be given, because the certainty which they afford excludes the probability of mistake. Ordinarily, a preference is given to natural objects over artificial monuments in determining boundaries, but natural objects cannot prevail when they are doubtful, and in that case recourse is had to artificial marks or monuments or other calls of an inferior degree of accuracy.''

There are two recognized exceptions to the rule giving preference to natural objects, namely, as stated by appellant: (1) Where the object called for was located, or rather designated by the surveyor by protraction, and not located on the ground by actual survey; and (2) where there is evidence which makes it appear that the surveyor was mistaken as to the position of the object called for. Asher v. Fordson Coal Co., 249 Ky. 496, 61 S. W. 2d 20; Fordson Coal Co. v. Napier, 261 Ky. 776, 88 S. W. 2d 985. But, as also stated by appellant, neither of the exceptions has any application to this case, be-

cause there is no evidence or presumption that the 15th corner (two spruce pines) was located by the surveyor at the time the survey was made by projection, or that the surveyor and patentee, who also was the marker, were mistaken as to the location of the two spruce pines when they described their location as being on the top of the ridge between White Oak Creek and Lewis Creek. Futhermore, in several conveyances dating back as far as 1890, the grantors and grantees of which were either owners of the 600-acre tract or of adjoining patents and boundaries, the location contended for by appellant is inferentially, if not specifically, recognized; and one or more of these conveyances are links in the Company's chain of title.

While the location of the 600-acre patent has not heretofore been adjudicated in litigation between the present parties, it is not without significance that in the case of Viall et al. v. Pepples et al. 274 Ky. 599, 119 S. W. 2d 860, in which the present appellant's title to a portion of the land embraced in the 600-acre patent was involved although its location was not, it was assumed by the surveyors and witnesses and shown by the maps filed as exhibits that the land embraced in the patent was located with reference to natural objects and surrounding grants as appellant contends it should be located. Of greater significance is the fact that in the District Court of the United States for the Eastern District of Kentucky, in the case of Inter-Mountain Coal and Lumber Co. v. R. T. Heaton Lumber Co. which directly involved the location of the 600-acre tract, the Honorable Church Ford, on June 12, 1943, after hearing the witnesses who testified in the present litigation, so it is stated in appellant's brief, entered a judgment locating the patent as appellant contends it should be located. While the decision of the Federal Court is not binding, either upon the present litigants or upon us, a proper concern for the orderly administration of justice, as well as our deep respect for the qualifications of the presiding jurist, renders it inevitable that we should include it among the factors influencing our conclusions.

In order that it may not be thought that we have failed to give sufficient consideration to the testimony on which the Company relies as establishing the beginning point of the 600-acre survey, we summarize that testimony and the testimony by which it is opposed,

treating it all as competent as no written exceptions thereto were filed.

John "Rooster" Turner, a son of Abner, pointed out the beginning corner of the 600-acre patent to Queens and to Dixon. Ran Turner, a brother of John, testified that John showed him this beginning·corner some 25 or 30 years ago; and Bowling testified that Ran pointed out this beginning corner to him.

Appellant's evidence is in direct conflict. He testified that John "Rooster" Turner pointed out to him the beginning corner of the 600-acre survey on the top of the ridge between White Oak and Lewis Creeks, and that both the sourwood and the chestnut oak pointers were still standing. Also John pointed out to him the two spruce pines at the 15th corner, and they found a marked sugar tree, or maple, standing at the 16th corner as called for. George Turner, a son of John "Rooster" and a grandson of Abner, testified that he had heard both his father and mother say that the beginning corner of his grandfather's 600-acre patent was at the sourwood and chestnut where appellant claims to have found it. George further testified that his father had told him where the two marked spruces stood, at the 15th corner as claimed by appellant, and the witness had seen them there.

James H. Jeffries testified that Abner Turner, the patentee, pointed out to him all the timber corners of the patent, and, as so pointed out, they were along the top or near the top of the ridge between White Oak Creek and Lewis Creek; that Abner Turner told him that the land embraced in the 600-acre patent was situated on White Oak Creek; and that when he, Jeffries, surveyed the patent, using the corners pointed out to him by Abner Turner, it did lie on White Oak Creek, and practically none of it was on the Lewis Creek side of the ridge.

Appellant directs attention to the fact that Ran Turner had been convicted of a felony and insists that this should discredit him as a witness. Ran appears to be a bold character, boastfully proclaiming from the witness stand: "I have 'snagge' 'sanged' (dug herbs), squirrel hunted and been hunted around there for 25 years and have been convicted of a felony right at this place twice." Appellant also points out that the Company's lay witnesses are its tenants; that the Company

will profit greatly if the 600-acre patent is given the location for which it contends, since such a result would make its conflicting junior patents, senior; and that Dixon, from time to time, seems to have adopted whichever location best suited the interest of his then employer. But Dixon attributed the first of his "alleged errors" in part to the fact that the location adopted by him was projected, without regard to the beginning point, from a map prepared by Cal Hurst many years previously, and in part to the fact that, locating the two spruce pines on the top of the ridge between White Oak Creek and Lewis Creek at the 15th corner and using the beginning corner now claimed by the Company, the survey would not "plot" (close).

The newly discovered evidence relied upon by appellant was the testimony of the witnesses, John H. Lewis, W. C. Creech, Monroe Turner, and Philip H. Fields. It appears from the record in the original action that appellant knew that Lewis and Creech had surveyed the 600-acre patent. Therefore, the testimony given by them in the suit for a new trial, though supporting appellant's contention, should not be considered for the reason that appellant knew during the taking of the proof in the original action that these two witnesses possessed certain information as to the location of the lines and corners of the patent. Had appellant subpoenaed Creech as a witness in the original action, he would have discovered that Monroe Turner was with Creech when the latter surveyed the patent. Accordingly Turner's testimony is no more entitled to consideration in the suit for a new trial than that of Creech and Lewis, since, under ordinary circumstances, to entitle one to a new trial on the ground of newly discovered evidence, it must be shown that the new evidence was not known and could not have been discovered by ordinary diligence. However, the testimony of the fourth newly discovered witness named in the petition seeking a new trial, Philip Fields, the county surveyor of Clay County, is not open to these objections and supports the conclusion which we have indicated should be drawn from what we have referred to as important and salient facts to be considered before accepting the Chancellor's findings. Fields' testimony is to the effect that in 1890, when he first engaged in land surveying, he was employed by E. H. Patterson, Trustee, who, at the time, was extensively occupied in buying land in Southeastern

Kentucky; that he was there during some of the time Jeffries was surveying in that section; that he was on White Oak and Lewis Creeks when Abner Turner came from his home in Clay County to point out to Patterson's surveyors his lines and corners; that at first he was selected to survey the lines of the 600-acre grant and that Abner Turner went with him, he thinks on Sunday, and showed him the timber corners, the first being a sourwood and chestnut oak standing on the top of the ridge between White Oak Creek and Lewis Creek, and the 15th, two spruce pines on the top of the same ridge, as well as others less prominent; that for some reason he was transferred to Coon Creek to survey land there, and accordingly did not in 1890 survey the 600-acre grant, but that in 1892 he was employed to survey out the older grants and interferences within the exterior boundary of the Lockard 40,400-acre patent, and at that time he surveyed the first fifteen lines of the Turner 600-acre grant, using the corners which two years previously Abner Turner had pointed out to him; that the lines which he surveyed were along the top, or near the top, of the ridge between White Oak Creek and Lewis Creek, and that the sourwood and chestnut oak, and the two spruce pines, as well as others which he could not recall, were in 1892, as they had been in 1890, marked as corner trees to the patent, or at least had that appearance. He testified that a short time before giving his deposition he had gone back on this ridge and found some of the same corners which had been shown him by Turner in 1890 and used in the survey of 1892; that the sourwood and chestnut oak were still standing, marked; that only one of the original spruce pines was standing; that it was growing on a rock and appeared to have grown but little since he first saw it, but that he saw no trace of the other pine.

On the whole, we think that the evidence compels the conclusion that appellant is entitled to the relief sought by him. Accordingly, the judgments are reversed for proceedings consistent with this opinion.