TIME FINANCE COMPANY, Inc.,
Appellant,

v.

Irving G. BECKMAN et al., t/d/b as Beck-
man & Beerbohm, Appellees.

Court of Appeals of Kentucky.

June 22, 1956.

Rehearing Denied Dec. 7, 1956.

Louis Cox, Frankfort, Kenneth C. Davis, Thomas S. Dawson, Louisville, for appellant.

Ephraim K. Lawrence, Jr., Louisville, for appellees.

## MONTGOMERY, Judge.

Appellees Irving G. Beckman and Alex M. Beerbohm, doing business as partners, sued Time Finance Company, Inc., appellant, for $11,036.26, claimed to be due under a contract for advertising material. Appellant denied liability and by counterclaim sought to recover $21,195.37 for the loss of business profits due to a breach of the contract. The case was referred to a commissioner, who, after hearing proof, made a report recommending judgment in favor of appellees for the amount claimed and dismissing the counterclaim. Appellant's objections to the report were overruled, and the trial court entered the judgment appealed from.

It is contended that the granting of the judgment was erroneous because: (1) the advertising material was delivered too late under the contract; (2) it was inferior in quality and workmanship and contained many errors; and (3) damages for breach of the contract were denied.

Appellees have been operating an advertising agency for many years. They sublet all of their printing, lithographing, and work of a similar nature. Their offices are in Detroit, Michigan.

Appellant is engaged in the small loan business, with its principal office in Louisville, Kentucky. In 1950, the year involved here, it operated forty-six offices in seven states.

For several years prior to 1950, appellees have done considerable advertising work for appellant. They specialize in advertising work for small loan companies and have done such work for about 1,700 small loan companies operating in the United States. As such, appellees are experts in the type and nature of advertising required by small loan companies and fully familiar with their requirements and with the fact that all such businesses have a peak season in November and December of each year, terminating at Christmas.

For many years, appellant had arranged prior to the peak season for special advertising to be used during that period. The principal method of advertising had been by direct mail to potential customers. This direct mail advertising consisted of what had been called over a period of years a Preferred Service Letter, which contained a Preferred Service Card. The card carried the name of the potential customer and the place for an identifying signature. It advised that the card was for the customer's exclusive use and entitled the holder to preferred service on a loan. There was a calendar on the back of the card.

In early March or April 1950, one of the appellees, as was customary, solicited orders for this type business from appellant for the 1950 peak season. Negotiations were conducted principally with B. J. Lenihan, President of the company. Lenihan outlined what he had in mind for direct mailing use during the 1950 peak season, and was told that appellees would design a Preferred Service Letter and Card suitable for appellant's requirements. Upon assurance that the material would be delivered in time for use prior to and during the peak season in 1950, Lenihan agreed to place the order, and authorized appellees to submit designs for the material. The details of design were worked out with S. B. Straske, Secretary-Treasurer of appellant company.

Appellant contends that the delivery date under the agreement was to have been in

October 1950, prior to its peak season in November and December. It is urged that appellees knew the purpose of the direct mail advertising and the necessity for its delivery prior to the peak season by reason of their expert knowledge and long experience in the advertising business for small loan companies. Appellees contend that no contract was made until an order signed on September 12, 1950, which was too late for the delivery date contemplated by appellant.

A review of the evidence relating to the preliminary negotiations for the contract and the entire transaction shows that the advertising material, as a usual business practice in this type enterprise, was a program primarily designed for use during the peak season of each year; that is, the two months just prior to Christmas. This was well known to both parties.

There were many communications between the parties during the late summer and early fall of 1950 concerning the details of the agreement and the preparation of the material. All the requirements for the formation of an informal contract are present. Williston, Contracts, Volume I, Section 18, page 25.

The only disputed provision of the contract is the delivery date. A review of the correspondence, when considered in relation to the negotiations and circumstances, is enlightening.

On August 8, appellant requested price quotations on various quantities of material. On August 30, appellees were advised that appellant planned to start "mailing as quickly as possible this Fall."

On September 7, appellee Alex M. Beerbohm wrote appellant the following:

"Thank you very much for your letter of August 30th, giving us instructions to proceed with the Preferred Service letter and card, and also your credit card. * * * As of this writing, the complete job of credit cards, preferred service cards, and letter will be shipped to your various offices by the latter part of October. Thank you once again for your very valuable business and awaiting your further word, I am, * * *"

In connection with the proof on the material, reference was made by letter to appellees on September 9 "of the press of time." Appellees forwarded the art work on the letter by special delivery on September 11. A letter of that date requested that it be checked immediately and returned "by return mail, if possible." By letter of September 12, appellant advised appellees, "We want the Preferred Service Cards and Letters as quickly as possible." On November 13, appellant complained of the delay in delivery and requested shipment "as quickly as possible." On November 16, appellees were reminded that all material had not been received "as promised the latter part of October." Reference was made in a letter to appellees on November 20 to a previous letter from appellant dated September 28, requesting that half of the material be sent the latter part of October and the remainder during January.

The letter of appellant dated September 7 clearly shows that the agreement had been concluded, with the complete job to be shipped by the latter part of October. The quoted references in the correspondence show that both parties contemplated an October delivery date. Considering the importance of delivery of this type material and the experience and knowledge of appellees in the business, we conclude that the agreed delivery date was October. We cannot agree that the use of the phrase "as quickly as possible" altered the written commitment to deliver in October; nor is there any merit in appellees' contention that the purchase order dated September 12 constituted the contract, in view of the September 7 letter.

The advertising material was not shipped or delivered in time for use prior to the peak season. Deliveries began on November 8, 1950, and continued through December and January. In many instances, the letters and cards were shipped separately and arrived at different times. This was

the cause of further delay since they were to have been mailed to customers at the same time. Due to the delayed arrival of the material during the peak season, appellant was hampered in mailing the letters and cards. The failure to deliver the material in October constituted a breach of the contract.

■ ■ The acceptance of the material was not a waiver of the right to sue for damages because of late delivery, since the parties contemplated the specific and immediate use of the material when they contracted. Fairbanks, Morse & Co. v. Hooper, 147 Ky. 154, 143 S.W. 1025; Carson-Muse Lumber Co. v. Fairbanks, Morse & Co., 151 Ky. 404, 152 S.W. 256; Fairbanks, Morse & Co. v. Carson-Muse Lumber Co., 160 Ky. 346, 169 S.W. 731. It was too late to order other materials, and it was the duty of appellant to use the material after late delivery in order to minimize any damage. Howard Supply Co. v. Wells, 6 Cir., 176 F. 512, 100 C.C.A. 70. Where the inherent and obvious purpose of an agreement for the sale of advertising material is for its use during the peak season of business, the failure to deliver it in time to fulfill such purpose entitles the purchaser to recover damages resulting from such delay, including loss of anticipated profits, provided such profits can be shown with reasonable certainty and are not purely speculative. Lillard v. Kentucky Distilleries & Warehouse Co., 6 Cir., 134 F. 168, 67 C.C.A. 74.

It was shown that the material was defective in many respects, including failure to put the Union Label on it. Many of the customers, both potential and actual, were members of labor organizations, and the failure to use the Union Label was calculated to have caused a loss of business. The workmanship was also inferior. All of these matters contributed to the damage suffered by appellant, but in view of the method used to determine the damage, it is unnecessary to discuss them further.

Appellees objected to the evidence offered by appellant to prove the loss of anticipated profits. The commissioner sustained objections to part of the evidence as introduced, and avowals were made as to what the testimony would show. Later, upon introduction of further testimony, the commissioner reserved his ruling on the objections, but the record does not disclose that he ever passed on the objections. In his report, this evidence was considered.

■ Insofar as no ruling was made on the testimony offered, the rule should be applied that failure to obtain a decision on the objection constitutes a waiver thereof. Chesnut v. Allen, 282 Ky. 703, 139 S.W.2d 729; Karr v. Worley, 306 Ky. 301, 207 S.W. 2d 750. This action was filed and the questioned evidence was taken prior to the effective date of the Civil Rules.

■ ■ Part of the evidence offered was objected to as being hearsay. Appellant contends that the evidence was competent under the "shop book rule" since they were record entries made in the regular course of business. This evidence was offered to show that the appellant maintained a system of records whereby the origin or source of each loan was determined. On each loan application, the applicant was asked to say how he came to do business with the appellant. These answers were then recorded and tabulated to determine the effectiveness of the various kinds of advertising used, such as radio, newspaper, television, direct mail, customer referred, and personally referred. By computation, appellant was able to determine how many pieces of direct mail advertising would produce a new loan. This was shown to have been an established practice in the small loan business. The "shop book rule", as an exception to the hearsay rule, is well established, and the offered evidence was admissible. Wigmore, Evidence, Volume V, pages 364, et seq.; Louisville & N. R. Co. v. Daniel, 122 Ky. 256, 91 S.W. 691, 3 L.R.A., N.S., 1190; Fidelity & Deposit Co. of Maryland v. Champion Ice Mfg. & Cold Storage Co., 133 Ky. 74, 117 S.W. 393; Gus Datillo Fruit Co. v. Louisville & N. R. Co., 238 Ky. 322, 37 S.W.2d 856; Joseph Denunzio Fruit Co. v. Louisville & N. R. Co., 276

**350**

Ky. 168, 123 S.W.2d 813; Whittaker **v.** Thornberry, 306 Ky. 830, 209 S.W.2d 498.

■ Appellees also questioned the evidence offered by appellant to show loss of anticipated profits by past experience. During the four-year period, 1946–49, preceding the year involved, it was shown that 337.2 pieces of direct mail advertising produced one new loan averaging $173.52. On the basis of the four years' experience, appellant should have obtained 2,346 such new loans from the 791,000 pieces of advertising material used, which would have resulted in new loans totaling $407,077.92. The new business obtained during the period from November 1950 through September 1951, when appellees' material was received and used, was $103,419.30. The net amount of new business lost was $303,658.62. Since the company's net earnings per hundred dollars for the 1951 fiscal year were $6.98, the net loss of profit was $21,195.37. The testimony as to the loss was uncontradicted. Inasmuch as half of the material ordered was delivered in January rather than during the peak season, by instruction from appellant, the recovery should have been one-half of the net loss of profits, or the sum of $10,597.68.

■ It is well settled that a loss of anticipated business profits by reason of a breach of contract may be determined by past experience. 15 Am.Jur., Damages, Section 150, page 560; Union Cotton Co. v. Bondurant, 188 Ky. 319, 222 S.W. 66; Eastern Kentucky Lumber & Development Co. v. Waddell, Ky., 239 S.W.2d 68, and cases cited therein. Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652; Williams v. Northern Natural Gas Company, D.C., 136 F.Supp. 514.

The judgment is reversed insofar as it failed to credit appellees' judgment in the sum of $10,597.68 on appellant's counterclaim, leaving a net recovery by appellees in the sum of $438.58, and it is directed that judgment be entered accordingly.