## Equitable Life Assurance Society of the United States v. Kazee.

(Decided Dec. 4, 1934.)

WM. MARSHALL BULLITT, EUGENE B. COCHRAN and BRUCE & BULLITT for appellant.

JOHN T. DIEDERICH for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

David Kazee began work as an employee of the American Rolling Mill Company, Ashland, Ky., in September, 1924. The company carried for its employees a group policy of insurance with the Equitable Life Assurance Society of the United States. It embraced two plans: a noncontributory, which was free of cost to the employees, and a contributory, under which they paid a part of the premiums to the American Rolling Mill Company. Kazee was insured October 10, 1931, for $1,080 under the noncontributory, and $1,300 under the contributory plan.

The policy provided for the payment of benefits to Kazee in the event he became "wholly and presumably permanently prevented thereby for life from pursuing any and all gainful occupation"; the payment to begin six months after the receipt of proofs of disability.

Asserting that while in the service of the rolling mill company he became afflicted with the loss of the sight of his right eye, heart disease and general physical deterioration," which rendered him "wholly, totally and permanently disabled." On or about the 1st day of February, 1932, he furnished proofs of his disability to the Equitable, and demanded payment of the benefits of the policy in accordance with the terms thereof. His claim, with proofs of disability, was sent to the Equitable July 8, 1932, and received by it July 11th. The Equitable, by letter to Kazee, requested postponement of a consideration on his disability claim for a period of six months.

This action to recover thereon was filed August 10, 1932. By proper pleadings, an issue was joined as to his right to recover as per the provisions of the

group policy. On a trial before a jury, a verdict was returned in his favor of $2,333. A judgment was entered thereon April 13, 1933.

For reversal the Equitable argues:

"There was no evidence that Kazee became totally and permanently disabled while he was employed. A peremptory instruction for the Equitable should have been given. The lower court's remarks upon the tendering of the amended answer were improper and prejudicial. The lower court abused its discretion in refusing to file the amendment to the Equitable's answer tendered during the trial, and it erred in excluding evidence in support of the allegations in that amendment. The lower court erred in admitting evidence that the American Rolling Mill Company had a rule that it would not employ any one with defective vision and the evidence of Dr. Richardson, based upon hearsay, that Kazee had syphilis. Interest on the recovery should not have been allowed from July 20th, 1932. The verdict is palpably and flagrantly against the weight of the evidence."

Kazee claims that he became ill in 1930. It is described by him in this language:

"I went out on the porch one evening and sat down, about dark, and I had a spell come over me like I was smothering, and it started down here in the lower part of my chest and got up in my throat, and I started walking through the house when that started, and I came back to the porch when it got up in my throat and I told my mother to get the doctor; that I was dying, and they sent for Dr. Hall at South Ashland." "I went right on and had them spells, one right after another, smothering and nervous conditions, and I have even worked when I felt that way—them nervous conditions—and just thinking any time I would suffocate or die or smother to death, and I had them spells right along all the time." "I have double vision in that eye. I can look at anybody in front and look at their face and I see two faces—one with this eye (indicating) and the other one down to the left with the other eye."

At the commencement of his illness, his duties were those of an operator of an electric crane. The last work he performed was in January, 1932. He claims that he has been "under the constant care of doctors" from some time in 1930. Before he ceased to work, in addition to the ailments described in his quoted testimony, he had recurring hemorrhage of the lungs. His testimony is corroborated by colaborers and a number of physicians.

The testimony of the Equitable, in part, contradicts that in his favor.

A careful and earnest review of the whole of the testimony leaves no room for doubt of its sufficiency, not only to authorize the submission of the case, but to sustain the verdict of the jury.

Evidence was admited to show that the rolling mill company had a rule it would not employ any one with a defective vision, and Dr. Richardson was permitted to express the opinion that Kazee was afflicted with a venereal disease. This testimony was admitted over the objection of the Equitable. It is now complaining of its admission. The evidence so abundantly establishes that Kazee was suffering from a defective vision —having practically lost one eye and the other affected by "double vision"—it is scarcely conceivable that, however incompetent the evidence showing the rule of the rolling mill company in relation to defective vision, it did, or could, in any way influence the jury in the consideration of its verdict.

The objection to the testimony of Dr. Richardson is not authorized by the record. True it is, in detailing his information of the disease with which Kazee was afflicted, his statement was apparently based upon his observation of X-ray pictures and the report concerning the same, made by others. Such was clearly hearsay and incompetent. Independent of the hearsay as it is disclosed by his testimony, he stated that it was his opinion Kazee was so diseased, and his opinion was based on "the loss of his [Kazee's] eye; the distruction of the eye led him to believe there was some venereal trouble there." In expressing his opinon, he based it, in part, upon a Wasserman test that had been made by another. The court properly directed the jury to disregard this portion of his answer. After

so admonishing the jury, the court properly overruled. the Equitable's motion to strike the whole of his testimony.

The trial began on April 12th, and the next day the Equitable tendered a second amended answer. To filing of it the plaintiff objected; the court sustained the objection; and refused to let it be filed. To this ruling the Equitable excepted, and the trial proceeded to a verdict.

The tendered amendment was not made a part of the record either by an order of court or the bill of exceptions; nor did the Equitable request it so be made a part of the record. Therefore, according to the accepted rule of practice, the Equitable is not now entitled to have it regarded as a part of the record or urge the ruling of the court thereon as a ground of reversal. It is an inflexible rule of this court to disregard a tendered amendment which is not a part of the record made so by an order of court or the bill of exceptions, and, unless this rule is complied with, we will not review the ruling of the trial court appertaining to it. Newman's Pleading & Practice (Rev. Ed. of 1907, sec. 675); Fidelity & Deposit Co. of Maryland v. Lawrence Jones et al., 255 Ky. —, — S. W. (2d) —.

Adhering to this rule, the Equitable is without right to complain of the action of the trial court refusing to permit it to file the tendered amendment.

The remarks of the court concerning his refusal to permit to be filed the tendered amendment, wherein he used the words "hot and cold," did not relate to any issue submitted to the jury, nor to any fact, material or otherwise, testified by a witness. It is not conceivable that the jury's verdict was in any way controlled or influenced by the remarks of the court; or that the same were calculated to prejudice the Equitable or create a contempt in the minds of the jury for the counsel of the Equitable. The Equitable cites to us, in support of its criticism of the court's remarks, City of Prestonsburg v. Mellon et al., 220 Ky. 808, 295 S. W. 1064; Northeast Lumber Co. v. Harris, 220 Ky. 454, 295 S. W. 455; Massie v. Commonwealth, 24 S. W. 611, 15 Ky. Law Rep. 562; Searcy v. Commonwealth, 188 Ky. 422, 222 S. W. 513; Strange v. Commonwealth, 64 S. W. 980, 23 Ky. Law Rep. 1234. The remarks of the court

in the pending case are not comparable to those in the cases cited. See Snowden v. McKinney, 7 B. Mon. 258; L. & N. R. R. Co. v. Louisville Provision Co., 212 Ky. 709, 279 S. W. 1100.

The Equitable is correct in its contention the judgment should not have allowed interest from July 20, 1932. A rider attached to the group policy recites:

> "In case of disability claims submitted by employees to whom certificates have been issued prior to August 1928, if due proof be submitted in accordance with said provision of an insured employee's total and permanent disability, the Society will pay six months after receipt of such proof," etc.

The stipulation of the parties shows that Kazee's proofs of claim were received by the Equitable on July 11, 1932. Considering the quoted provision of the rider in connection with the stipulated fact, the disability benefits under the policy were not due and payable until January 11, 1933, or six months after the date of the company's receipt of the proof of his claim. Interest on the judgment for this six months is $66.99. The judgment, in so far as it permits the collection of interest from July 20, 1932, is manifestly a clerical misprision within this term as it is defined by section 517, Civil Code of Practice, which may be corrected as provided by section 519 thereof. See Troxwell v. Fugate, 3 Ky. (Hardin) 2; Big Sandy Ry. Co. v. Rice's Adm'r, 147 Ky. 645, 143 S. W. 1199; Johnson v. Bank of Ky., 2 Duv. 521; Keyser v. Hopkins, 237 Ky. 105, 34 S. W. (2d) 968; Stratton & Terstegge Co. v. Begley, 249 Ky. 632, 61 S. W. (2d) 287.

In the disposition of this case we have confined our views of the Equitable's right to reversal to the grounds stated in its brief; no other has been considered.

Wherefore the judgment is affirmed.