Jessie James **BELLEW**, Sr., Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 3, 1972.

Wade F. Richardson, Brandenburg, for appellant.

John B. Breckinridge, Atty. Gen., Douglas E. Johnson, Asst. Atty. Gen., Frankfort, for appellee.

MILLIKEN, Judge.

Sergeant Jessie James Bellew was indicted for the fatal shooting of his wife Dianne with a pistol in their trailer home near Ft. Knox on February 18, 1968, just a few days before he was scheduled to depart for service in Germany, intending to leave his twenty-one-year-old wife of three months and her three-year-old daughter in this country. Bellew claimed the killing was accidental and on two previous trials the juries were not able to reach a verdict, but on the third trial he was found guilty of voluntary manslaughter and sentenced to eighteen years' imprisonment. He did not appeal, but this belated appeal was granted because of uncertainty about whether he had been adequately informed of his right to appeal and that the court would appoint counsel for that purpose if he was financially unable to employ one.

The shooting occurred on Sunday in mid-afternoon after Bellew had imbibed some beer and whiskey with some friends at an establishment nearby and at Bellew's trailer home later. When a man drove up and asked for Bellew's wife calling her "D", Bellew got his pistol, ordered the visitor to leave and fired a shot over the automobile. When Mrs. Bellew cried and complained of his conduct, he took her to her bedroom and came out later closing the bedroom door and asked his friends to leave.

Bellew is a large man, over six-feet tall, and weighed twice as much as his wife, who was five-feet-three inches in height. He testified that he slapped her a few times while in the bedroom, but claimed that the shooting occurred accidentally when he tried to wrest the pistol from her hands after she had taken it from a holster hanging on the wall a few feet from him. There were no powder burns on her body which indicated, according to an expert witness, that the shot was not at close range. After the shooting, Bellew ran to a neighbor's home to telephone for an ambulance, saying his wife had been shot, and rode with her to the Ireland Army Hospital where she died a few hours later.

After his wife's death, Bellew was asked by the police to return to his trailer with them. There they found the trailer in bad disarray with blood dripped on the floor from the bed to the bathroom where a clot of blood was found in the commode. The first person, other than Bellew, who talked to Dianne after the shooting, testified that he asked her what had happened and all she said was "water." An abundance of testimony portrayed her body as horribly battered with bruises on her throat and all over her body including the inside of her upper legs and the vaginal area; both eyes were blackened, her mouth grossly swollen and her lips cut by her teeth, and a patch of hair yanked from her head. Her clothes

had been torn off. Bellew admitted he had slapped her when she gave him defiant answers to his questions, but also said he had had no previous cause to doubt her loyalty. The autopsy revealed the bullet had entered the left side of her body near her shoulder blade, cutting blood vessels and flooding the lung and heart area with blood which caused her death.

■ Bellew's defense principally rested on his claim that the shooting was accidental. When he made the phone call for the ambulance, he said his wife had been accidentally shot. He said his wife said "she could end it all" when she got the pistol, and the shooting occurred when he tried to wrest it from her. On the way from the hospital back to the trailer with the officer and before he was arrested, it was testified, he said several times, "I shot her but it was an accident." It was clear that the police had focused their attention on Bellew after they saw his wife's battered body, but they did not attempt to put him under arrest until after they had seen the condition of the trailer. It was then that they gave him the Miranda warnings of his right to be silent. At any rate, there was no objection made at the trial to the testimony of the police as to his statements. Consequently, the error, if any, was not pursued and can not be considered on appeal. Dolan v. Commonwealth, Ky., 468 S.W.2d 277 (1971); Spencer v. Commonwealth, Ky., 467 S.W.2d 128 (1970). When he took the witness stand in his defense Bellew pursued his theme that the shooting was accidental and pleaded no recollection of whether he had made the incriminatory statements to the police.

■ Another alleged error was the introduction by the State of the autopsy report. It was stipulated during the course of the trial that the doctor who made the autopsy report and death certificate, Azorides R. Morales, was not available to testify, but was in Viet Nam. The autopsy report and death certificate were placed in

evidence by John P. Ford, custodian of medical records at Ireland Army Hospital, over the appellant's objections. Though ordinarily the hearsay rule prevents the introduction of evidence given by persons who do not have personal knowledge of the facts, there is a well-established exception which permits the use of record entries made in the regular course of a business or profession. Brown v. Commonwealth, Ky., 440 S.W.2d 520 (1969); Time Finance Company v. Beckman, Ky., 295 S.W.2d 346 (1956). This exception has been extended in a civil case to records of a medical nature. Whittaker v. Thornberry, 306 Ky. 830, 209 S.W.2d 498 (1948), and in a criminal case in Dotye v. Commonwealth, Ky., 289 S.W.2d 206 (1956). Appellant does not question the accuracy of the autopsy report and other medical records, but instead contends that the documents were meaningless unless they were introduced by a person with some medical knowledge capable of explaining the information in the documents. Wigmore, Section 1707 states that medical records "should be admissible either on identification of the original by the keeper, or on offer of a certified or sworn copy." See also 32 C.J.S. Evidence § 728f. Wigmore suggests that amid the day-to-day details of scores of hospital cases, physicians and nurses can ordinarily recall from actual memory few, if any, of the data entered on hospital records; hence, to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone. Since the accuracy of the report is conceded, we find no error in the admission of it without the physician who made the autopsy being present, a proper foundation for its admission having been laid.

■ Another alleged error involved the jury. Appellant contends that, although the jurors were asked the routine questions, one of the jurors who later found the appellant guilty of voluntary manslaughter had, before the trial, made statements to the effect that he could not find

for the accused. At least two witnesses apparently testified in the judge's chambers that they heard these statements made. Appellant admits that no record of the *voir dire* examination of juror qualifications was made. Two affidavits are attached to his brief which state that after the trial of his case, the affiants heard one of the jurors make the statement that "before the trial he had said that he could not find for the defendant." These affidavits are not part of the record, and there is nothing before us from which we can determine what information was presented to the trial judge for or against a showing of jury misconduct. In such circumstances, the question can not be considered on appeal. Pendland v. Commonwealth, Ky., 463 S.W.2d 130 (1970); Green v. Commonwealth, Ky., 413 S.W.2d 329 (1967); Perkins v. Commonwealth, Ky., 382 S.W.2d 393 (1964).

■ The Commonwealth concedes that in questioning the appellant as to whether his civilian record was clean and eliciting the answer that he had been convicted of drunken driving and petit larceny, the prosecutor went further than permitted by Cowan v. Commonwealth, Ky., 407 S.W.2d 695 (1966), and Cotton v. Commonwealth, Ky., 454 S.W.2d 698 (1970). Cowan stands for the proposition that once a witness is asked if he has been convicted of a felony and answers affirmatively, that must be the end of it, with the usual admonition that proof of the prior convictions can be considered only as affecting the witness' credibility, and if he says no, refutation by the record will be limited to one previous conviction. Cotton limits the inquiry for impeachment purposes in a criminal case to felonies that rest on dishonesty, stealing and false swearing, but removed the limit of one such conviction imposed by Cowan and allows cross-examination as to

each such conviction at the discretion of the trial judge. However, the appellant's offenses were not felonies, but rather misdemeanors, and in Hensley v. Commonwealth, Ky., 258 S.W.2d 899 (1953), we held that it was reversible error to show that the defendant had been convicted of misdemeanors, citing cases. The Commonwealth contends that the error, if any, is not prejudicial since the prosecutor did not dwell on the misdemeanor convictions and elicited the information unexpectedly. We think in the circumstances this was harmless error. RCr 9.24 and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

■ The appellant further objects to the admission of testimony concerning the extensive bruises on his wife's body and the introduction of pictures of the death scene and her torn and bloody clothing. He also complains about a portion of the Commonwealth's closing argument which described the treatment of the body as "the worst, most violent" the prosecutor had seen in thirty years. The prosecutor stated that he wished Mrs. Bellew was present "but he put her in her grave so she couldn't be. And she lies in a cold grave over in Croydon, Indiana." The Commonwealth points out that the appellant did not object to the pictures when introduced. The pictures of her bruised body were evidence that the killing was not accidental. There was no objection as far as the testimony and photographs are concerned and thus no issue in regard to them may be raised on appeal, but there was an objection about reference to the cold grave in the closing argument which we do not find prejudicial in the circumstance.

The judgment is affirmed.

All concur.