Stella Faye **BUCKLER**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
Appellee.

Supreme Court of Kentucky.

Sept. 17, 1976.

Thomas E. Clay, Staff Atty., Jefferson Dist. Public Defender, Louisville, for appellant.

Ed W. Hancock, Atty. Gen., Mary Ann Delaney, Asst. Atty. Gen., Frankfort, for appellee.

CLAYTON, Justice.

Stella Faye Buckler was indicted for the August 17, 1973, murder by suffocation of her two-month-old son, Brian Christopher Buckler. After a first trial resulted in a hung jury, a second jury was empanelled, returning a verdict of guilty and sentencing her to life imprisonment. Of the several assignments of error raised by the appellant, we find the contentions that the trial court erred in excluding her mental hospital records and in excluding expert opinion testimony regarding her mental condition based on those records to be meritorious, and, accordingly, we reverse the judgment of conviction.

At trial, appellant relied on her history of previous mental instability in presenting a defense of not guilty by reason of insanity. The evidence offered indicated she had attempted suicide while a graduate student at Indiana University in August 1971 and had subsequently undergone periodic treatment for mental depression at Our Lady of Peace Hospital in Louisville, Kentucky, being so hospitalized on two separate occasions for periods of approximately one month each for treatments involving the use of electric shock therapy and drugs. Shortly after the birth of her child on June 13, 1973, appellant expressed open hostility toward it and her husband and subsequently phoned him on August 17, 1973, at his place of employment to inform him that the infant was dead. He rushed home to find the baby lying on a bed, partially covered by a pillow. Appellant was arrested at the scene and committed to Central State Hospital (now River Region Hospital), Louisville, for psychiatric observation.

Appellant assigns as error the trial court's ruling that her medical records compiled subsequent to the alleged crime and in the custody and control of the Director of Medical Records at River Region Hospital were inadmissible as evidence by virtue of the hearsay rule. We agree that this evidence was improperly excluded, basing this conclusion on our decision in *Moore v. Commonwealth*, 92 Ky. 630, 18 S.W. 833 (1892), wherein this court held evidence of the defendant's mental condition subsequent to the commission of crime to be competent on the issue of insanity, and in *Whittaker v. Thornberry*, 306 Ky. 830, 209 S.W.2d 498 (1948), wherein we held medical records to fall within the coverage of the "shopbook" exception to the hearsay rule.

Although ordinarily the hearsay rule prevents the introduction of evidence given by persons lacking personal knowledge of the facts, courts have been willing to relax the rule in the interest of justice, thereby developing exceptions to the rule. The two underlying bases traditionally given for any such exception are a necessity for the admission of the evidence in its hearsay form, and a circumstantial guarantee of the trustworthiness of the offered evidence—that is, the presence of something which the law considers a substitute for the oath of the declarant, observation of his demeanor by the jury, and his cross-examination by the party against whom the hearsay is offered. 29 Am.Jur.2d, Evidence, § 496 (1967). The "necessity" element requires that the person whose assertion is being offered be unavailable to testify or that evidence of the same value cannot be expected to be obtained from the same or other sources. 5 Wigmore, Evidence, § 1420 (Chadbourn Rev. 1974). In *Whittaker v. Thornberry, supra*, this court held that when a proper foundation is laid, medical records are admissible into evidence by reason of the "shopbook" exception to the hearsay rule, which permits the admission as competent evidence of record entries made in the regular course of duty in a business or profession by persons not having knowledge of the facts entered. In

*Dotye v. Commonwealth*, Ky., 289 S.W.2d 206 (1956), we indicated this principle to be applicable to criminal as well as civil proceedings. In *Whittaker* and later in *Bellew v. Commonwealth*, Ky., 477 S.W.2d 779 (1972), we quoted approvingly the following from Professor Wigmore in reaching conclusions holding the medical records therein admissible:

"The medical records of patients at a hospital, organized on the usual modern plan, deserve to be placed under the present principle. They should be admissible, either on identification of the original by the keeper, or on offer of a certified or sworn copy. There is a Necessity; the calling of all the individual attendant physicians and nurses who have cooperated to make the record even of a single patient would be a serious interference with convenience of hospital management. There is a Circumstantial Guarantee of Trustworthiness; for the records are made and relied upon in affairs of life and death. Moreover, amidst the day-to-day details of scores of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action; hence, to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone. The occasional errors and omissions, occurring in the routine work of a large staff, are no more an obstacle to the general trustworthiness of such records than are the errors of witnesses on the stand. And the power of the Court to summon for examination the members of the recording staff is a sufficient corrective, where it seems to be needed and a bona fide dispute exists." Wigmore, Evidence, § 1707; *Whittaker v. Thornberry, supra*, 209 S.W.2d pp. 500–501; *Bellew v. Commonwealth, supra*, p. 781.

The medical records herein were ruled inadmissible because a proper foundation for their introduction had not been laid. The doctors who originally prepared the reports were not present at trial to testify as to their authenticity, not having been subpoenaed as witnesses. Because of this, the trial court reasoned that appellant had not attempted to obtain the doctors' presence at trial with the requisite "due diligence" to satisfy the necessity requirement for the admission of hearsay evidence, though appellant's counsel stated in chambers that the whereabouts of the doctors were unknown so that the issuance of subpoenas for them would have been useless. The trial court, therefore, based its exclusion of the medical reports on the wording of our holding in *Whittaker* where, after quoting the abovementioned statements from Wigmore, we stated, "We conclude that an authenticated hospital chart is admissible in evidence where the party offering it shows the necessity of admitting the record without requiring the person or several persons who made it, or caused it to be made, to testify." *Whittaker v. Thornberry, supra*, 209 S.W.2d p. 501. However, as our quotation from Wigmore in *Whittaker* and *Bellew* indicates, the necessity requirement for the introduction of this type of hearsay evidence is satisfied by the very nature of the evidence sought to be introduced. We therefore feel it serves no useful purpose to require any further showing of the necessity of admitting the medical records, as we indicated in *Payne v. Commonwealth*, Ky., 509 S.W.2d 264, 266 (1974), when we stated simply, "Our rule is that records of patients at a hospital, organized on the usual modern plan may be produced in evidence by the custodian of the records." To the extent the holding in *Whittaker v. Thornberry, supra*, requires such further showing of necessity, it is hereby overruled. The fact that the records in question pertain to mental, rather than physical, therapy does not preclude them from admission into evidence. In *Payne v. Commonwealth, supra*, we indicated that mental hospital records should be admissible when properly introduced. Then, as now, we saw no need to distinguish between hospital records pertaining to general physical treatment and those pertaining to mental therapy. We therefore conclude that hospital records, pertaining either to mental or physical therapy, are

admissible into evidence, either on identification of the original by the custodian of the records, or on offer of a certified or sworn copy. Their admission remains, of course, subject to the requirements of competency, relevancy and materiality. We thus find the trial court committed error in ruling the records inadmissible.

Appellant further assigns as error the trial court's refusal to allow an expert witness to express an opinion as to appellant's mental condition at the time of the offense, as well as to her subsequent mental condition, based on the excluded medical records and on consultations with the appellant. The present rule in this jurisdiction is that a medical expert may not state an opinion based on information supplied by third persons. *Lewis v. Commonwealth*, Ky., 332 S.W.2d 656 (1959); *Equitable Life Assurance Society of the United States v. Kazee*, 257 Ky. 803, 79 S.W.2d 208 (1934). However, the trend among the various other jurisdictions is to the contrary, so that a number of courts, influenced by the teachings of highly regarded legal commentators (such as McCormick, Evidence, § 15 (1955); 3 Wigmore, Evidence, § 688 (3rd Ed. 1940)), have begun to hold such testimony admissible where, as here, the information supplied by the third person has not become part of the record of the case, but is the kind of information which the expert customarily relies upon in the practice of his profession, since the expert remains subject to cross-examination and scrutiny by the jury regarding his opinion and the facts on which it is based. "Admissibility on Issue of Sanity of Expert Opinion Based Partly on Medical, Psychological or Hospital Reports," 55 A.L.R.3d 551 (1974). This trend finds support in Rule 703 of the Federal Rules of Evidence which states:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Fed.Rules Evid. R. 703, 28 U.S.C.

In *Sundquist v. Madison Ry.*, 197 Wis. 83, 221 N.W. 392, 393 (1928), the Wisconsin Supreme Court forcefully stated the policy underlying the admission of this type of evidence as follows:

> "In order to say that a physician, who has actually used the result of . . . tests in a diagnosis . . . may not testify what that diagnosis was, the court must deliberately shut its eyes to a source of information which is relied on by mankind generally in matters that involve the health and may involve the life of their families and of themselves—a source of information that is essential that the court should possess in order that it may do justice between the parties litigant.
>
> . . . "This court . . . will not close the doors of the courts to the light which is given by a diagnosis which all the rest of the world accepts and acts upon, even if the diagnosis is in part based upon facts which are not established by the sworn testimony in the case to be true."

The Supreme Court of Indiana articulated further support for the admission of such testimony in *Smith v. State*, Ind., 285 N.E.2d 275 (1972), wherein it stressed that with the increasing division of labor in modern medicine, the physician making a diagnosis must necessarily rely on the observations and tests of others as contained in hospital and medical records, and that records sufficient for diagnoses in the hospital should be enough for opinion testimony in the courtroom.

In *U. S. v. Williams*, 447 F.2d 1285, 1290 (5th Cir. 1971), the Fifth Circuit Court of Appeals stated the rationale for the admission of such evidence to be:

> ". . . that the expert, because of his professional knowledge and ability, is competent to judge for himself the reliability of the records and statements on which he bases his expert opinion. Moreover, the opinion of expert witnesses must invariably rest, at least in part, upon sources that can never be proved in court. An expert's opinion is derived not

only from records and data, but from education and from a lifetime of experience. Thus, when the expert witness has consulted numerous sources, and uses . . . his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise."

It appears to us that the trend evidenced by these decisions is wise and salutary; hence we adopt as an exception to the hearsay rule in Kentucky that an expert may properly express an opinion based upon information supplied by third parties which is not in evidence, but upon which the expert customarily relies in the practice of his profession. Our previous opinions to the contrary are hereby overruled. We emphasize that the type of information which can be utilized by the expert in forming his opinion should be only that produced by qualified personnel and on which the expert would customarily rely in the day-to-day decisions attendant to his profession. Such a limitation, we feel, guarantees a relatively high degree of reliability and frees the expert to use for his testimony the tools on which he normally relies in making a diagnosis.

We therefore conclude under this ruling that since the expert opinion excluded below was based, at least partly, on the River Region Hospital records, and since the expert whose testimony was excluded is accustomed both to forming this type of opinion and to relying on this type of information in the practice of his profession, such exclusion was in error. We cannot say what weight the jury would have given the excluded evidence, but do express the opinion that such exclusion was prejudicial to the substantial rights of appellant.

The judgment is reversed for a new trial.

All concur.