## BLUE CROSS AND BLUE SHIELD OF KENTUCKY, INC., Appellant,

v.

## Maude S. SMITHER, Appellee.

Court of Appeals of Kentucky.

Oct. 6, 1978.

Joseph M. Day, Ronald L. Gaffney, Charles D. Barnett, Barnett & Alagia, Louisville, for appellant.

Charles E. Carter, Owenton, for appellee.

Before HOWARD, HOWERTON and PARK, JJ.

HOWARD, Judge.

This is an appeal from a summary judgment entered in the Owen Circuit Court in favor of plaintiff-appellee, Maude S. Smither (hereinafter referred to as Smither), entitling her to recover certain benefits under the medical benefits plan of defendant-appellant, Blue Cross and Blue Shield of Kentucky, Inc. (hereinafter referred to as Blue Cross and Blue Shield). Blue Cross and Blue Shield argue that there was a genuine issue as to whether the entire period of Smither's hospitalization was "medically necessary" and therefore properly payable under the medical benefits plan.

Smither, being a 63-year-old retired postal worker, was a subscriber to the Blue Cross and Blue Shield medical plan through the Federal Employee Program, Contract No. CS 1039. On August 13, 1975, Smither was admitted to the Owen County Memorial Hospital pursuant to the orders of her physician, Dr. Maurice Bowling. The ad-

mitting diagnosis was injury to the anterior chest wall and thoracic spine occurring as a result of a fall in her bathtub. Shortly after her admission to the hospital, she suffered a cerebral vascular incident with residual weakness of the right upper and lower extremities. On October 29, 1975, Smither was discharged after 77 days of continuous confinement in the hospital, with the final diagnosis being sprain of the right anterior chest and thoracic spine, hypertension and cerebral thrombosis.

Smither thereafter filed a claim for benefits for the entire hospital stay of 77 days, which claim was submitted to the medical services review board of Blue Cross and Blue Shield. Subsequently, the claim was submitted to the Kentucky Medical Association Seventh Trustee Peer Review Committee (hereinafter referred to as the Peer Review Committee). Said Committee is an independent review board composed of physicians of various medical disciplines, who are not employees of Blue Cross and Blue Shield.

A review hearing was held by the Peer Review Committee, and the treating physician, Dr. Bowling, discussed Smither's case with the Committee. The Peer Review Committee recommended that benefits be paid to Smither for hospitalization only for the period from August 13, 1975 through September 6, 1975. The Committee also recommended that the remaining period of hospitalization from September 7, 1975 through October 29, 1975, was not medically necessary and benefits therefor should be denied.

The benefits for hospitalization were paid to Smither in accordance with the recommendations of the Peer Review Committee. She subsequently filed suit against Blue Cross and Blue Shield for payment of the remaining hospitalization period from September 7, 1975 through October 29, 1975.

The provisions of Contract No. CS 1039 provide that hospital services are covered only when "medically necessary" and that "[t]he fact that a physician may prescribe, order, recommend, or approve a service or supply does not, of itself, make it medically

necessary or make the charge an allowable expense. . . ." Another provision of the policy specifically excludes hospitalization and physician services for convalescent, domiciliary and custodial care, rest cures, physical therapy and rehabilitation.

Both parties moved for summary judgment and submitted affidavits in support thereof. Blue Cross and Blue Shield submitted the affidavits of Branham B. Baughman, M.D., Chairman of the Peer Review Committee, and B. Frank Radmacher, M.D., Chief of the Medical Services Section of Blue Cross and Blue Shield. Both physicians stated in their affidavits that it was their opinion that Smither's confinement in an acute hospital facility from September 7, 1975, through October 29, 1975, was not a medical necessity. Smither filed the affidavit of Dr. Bowling, the treating physician, who stated that it was his opinion that Smither's hospitalization during the contested period was a medical necessity.

Blue Cross and Blue Shield contend that the affidavits submitted by both parties show there is a genuine issue of material fact, namely whether a portion of Smither's hospitalization was medically necessary.

Smither contends that neither Dr. Baughman nor Dr. Radmacher should be competent to testify concerning the medical necessity of the contested hospitalization period since their only knowledge of same consists of having read her medical records at some period of time after the hospitalization. She states that the treating physician should decide the question of the medical necessity of hospitalization at the time the question arises and that his decision should always be controlling. Smither therefore concludes that the opinions of the non-treating physicians should be inadmissible and since there would then be no genuine issue as to any material fact, the summary judgment was properly granted.

CR 56 provides for the summary judgment procedure and CR 56.05 reads as follows:

Supporting and opposing affidavits shall be made on personal knowledge, shall set

forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . .

In *Hill v. Fiscal Court of Warren County*, Ky., 429 S.W.2d 419, 423 (1968), the court held that affidavits of experts were properly considered in support of a motion for summary judgment since their opinions expressed in the affidavits "would be admissible in evidence" within the meaning of CR 56.05.

And in *Buckler v. Commonwealth*, Ky., 541 S.W.2d 935, 940 (1976), the court adopted, as an exception to the hearsay rule, the rule that an expert may express an opinion based upon information supplied by third parties, which is not in evidence, but upon which experts customarily rely on in the practice of their professions. In *Buckler, supra*, the refusal by the trial court to allow an expert to express an opinion as to the appellant's mental condition, based on appellant's medical records and consultations, was held to be error.

■ In the instant case, Drs. Baughman and Radmacher based their opinions on the lack of medical necessity of the hospitalization period after reading Smither's medical records. Their opinions would be admissible under *Buckler, supra*, and were properly submitted, under CR 56.05, by Blue Cross and Blue Shield in support of its motion for summary judgment.

Smither's argument is, in essence, that the only medical advice the patient has concerning his hospital stay is that provided by the treating physician, and therefore his opinion should be treated as correct and not be subject to contradiction. We do not believe a treating physician should be placed in this unassailable position. One need only look to the Medicare and Medicaid System for alleged evidence of fraud which may occur on the part of doctors and other persons in the medical care professions, if their decisions are always assumed correct.

Since a large part of today's rising medical costs are borne by organizations which offer medical benefits plans, such as Blue Cross and Blue Shield, we believe these organizations should be entitled to some measure of protection and should be allowed to challenge decisions made by doctors.

■ We do not, of course, decide whether Smither's hospitalization during the contested period was or was not a medical necessity, but rather that a real issue does exist between the parties on that point. CR 56.03.

See *Pennsylvania Life Insurance Co. v. Mattingly*, Ky., 464 S.W.2d 632 (1971), where in an action by an insured against the insurer, the court held that a jury issue was created as to whether the insured, who saw a doctor two days after an accident, had shown his injury required "regular and personal attendance by a physician within 20 days" as stated in the insurance policy as a prerequisite to recovery. See also 81 A.L. R.2d 967 *Anno.: Blue Cross-Blue Shield—Coverage*, § 5, conditions covered and services provided, generally.

The summary judgment entered by the trial court is reversed and the trial court is directed to give the appellant a trial on the merits.

All concur.